## Williams v. Milliken

*David F. Megnin,* for plaintiff.
*J. Philip Bromberg,* for defendant.

NICKLEACH, *J.,* June 9, 1989 — In this custody matter, plaintiff, Jerry Wayne Williams, seeks to reopen the record in order to pursue a paternity identification method known as DNA fingerprinting. The matter was previously heard by President Judge House of this court who, by opinion dated November 6, 1984, determined that plaintiff was

the natural father of Jeremiah James Fornell and Miranda Nicole Fornell, and ordered custody to plaintiff. Defendants appealed to Superior Court which, by opinion filed January 24, 1986, reversed President Judge House insofar as Jeremiah Fornell was concerned holding that plaintiff failed to overcome the presumption of legitimacy. As to Miranda Fornell, the lower court order was vacated and the case remanded to re-examine the evidence in light of the clear and convincing burden of proof-required in the case. See *William v. Milliken*, 351 Pa. Super. 567, 506 A.2d 918 (1986). No further activity took place until January 26, 1988 when plaintiff filed the within motion to reopen record. Attached to plaintiff's motion are 14 exhibits detailing the procedure sought by plaintiff and its acceptance in the scienfitic community. In further support of his motion plaintiff offered, at the date fixed for the rule return, the affidavit of Daniel D. Garner.[1] Defendants offered no objection to the exhibit nor did they produce any testimony in opposition to the motion.

DNA fingerprinting is a relatively new procedure which studies the makeup of chromosomes in the cells of a particular individual. In each chromosome, the information-carrying material is a substance called deoxyribonucleic acid (DNA) which is composed of two strands which fit together like a zipper. Throughout each DNA strand identical DNA sequences take place which are unique to each individual (except identical twins). Using a process called electrophoresis, the DNA fragments are separated and blotted onto a membrane. Radioactive probes are added to the membrane which attach

---

1. Apparently economics prevent plaintiff from securing the testimony of the various experts, either in person or by deposition, to the testing procedure and its acceptance in the scientific community.

themselves to the DNA and provide a picture of the DNA sequences. By studying these sequences a "fingerprint" can be developed for each individual. Since the DNA structures are inherited from one's parents, by studying the "fingerprint" and comparing its makeup to others, questions of paternity can be answered with virtual certainty. The procedure was devised in the early 1980's by Dr. Alec Jeffreys of the University of Leicester in England and has since been utilized in criminal investigations, as well as paternity identification in immigration cases. The technique was introduced to the United States in 1987, after the remand by the Superior Court in this case. According to the exhibits attached to the motion, the international scientific community has accepted the validity of the procedure.

The use of DNA fingerprinting as a means of paternity identification has not been addressed by our appellate courts, although the use of electrophoresis, the process used to examine genetic makeup, was upheld in *Commonwealth v. Middleton,* 379 Pa. Super 502, 550 A.2d 561 (1988). In *Andrews v. State,* 533 So.2d 841 (Fla. App. 5th Dist. 1988) the Florida District Court of Appeals sanctioned the use of DNA fingerprinting in a criminal case. In the State of New York, the DNA test has been utilized by lower courts in both criminal and paternity matters.

In *People v. Wesley,* 533 N.Y.S.2d 643 (1988), a criminal case, Judge Harris exhaustively studied the question of the use of DNA fingerprinting and its acceptability as a modern tool of forensic science. He provides a detailed explanation of the science of DNA fingerprinting and concludes thusly:

"DNA fingerprinting — its underlying principles, procedures and technology — is a scientific test that is reliable and has gained general acceptance in the

scientific community and in the particular fields thereof in which it belongs — to wit, molecular biology, population genetics and diverse other branches of genetics, chemistry, biology and biochemistry." *Id.* at 659.

In a footnote to the above-quoted conclusion Judge Harris refers specifically to the use of DNA in testing for paternity:

"DNA paternity testing utilizes the same principles, procedures and technology as DNA fingerprinting and is a scientific test that is reliable and has gained general acceptance in the same scientific community." *Id.*[2]

*Matter of Adoption of Baby Girl S.*, 532 N.Y.S.2d 634 (Surrogate Court New York County, 1988) involved the question of paternity of an infant to be placed for adoption. The New York court accepted the results of the DNA probe testing, noting that the medical witness in the case, Dr. Suessman, endorsed the probe "as an extremely accurate way to identify the gene structure of an individual." *Id.* at 637.

In determining whether a particular scientific principle should be utilized by the courts, *Commonwealth v. Middleton, supra,* restated the test of *Frye v. United States,* 54 D.C. App. 46, 293 F. 1013 (1923) which was adopted by Pennsylvania in *Commonwealth v. Topa,* 471 Pa. 223, 369 A.2d 1277 (1977).[3]

---

2. Within the above-cited *Wesley* case, the court also decided *People v. Cameron Bailey,* a rape case in which the state apparently sought, through the use of DNA testing, to establish that the defendant was the father of a fetus aborted by the victim following the rape. Hence the use of DNA testing to determine paternity was directly in issue in the *Wesley* case.

3. The *Frye* test is also the test used with some refinement in New York as a basis for accepting scientific principles, see

"Just when a scientific principle or discovery crosses that line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs." *Middleton, supra.*

Based on the foregoing, we are inclined to reopen the record in this case in order to permit DNA fingerprint testing. First of all, the procedure was unavailable in the United States at the time of the prior hearings in this case. Secondly, while direct testimony would have been preferable, plaintiff's exhibits nevertheless show that the procedure is generally accepted in the scientific community thus meeting the *Frye* test. Thirdly, defendants have failed to produce any evidence showing unreliability or insufficient acceptance of the technique in the scientific community. *Middleton, supra.* Finally, we believe plaintiff should be given every opportunity to prove his paternity. As the Superior Court stated in the case of *John M. v. Paula T.*, 377 Pa. Super. 72, 546 A.2d 1162 (1988):

"Having recognized the right of the putative father to litigate his claim . . . we cannot then take away from him the same right to prove his claim as other litigants enjoy. Guarantees of due process and

---

*People v. Wesley, supra,* at 645. Although the *Frye* test was not followed in *Andrews v. State,* the Florida Appellate Court noted that the *Frye* test would be met if *Frye* were being followed, *Andrews v. State, supra.*

equal protection command that the courts shall not create artificial barriers which will make it impossible for a contending biological father to litigate his private interest in a child whom he allegedly has sired." *John M., supra.*

It may be that the requested test will not serve to prove that plaintiff is the father of Miranda Fornell. This is especially true since the mother is deceased. However, according to the exhibits and affidavit in support of the motion, the test can be performed without the mother. In any event, we believe plaintiff should be given the opportunity to prove his claim using this recently discovered procedure.

Plaintiff asks the court to order plaintiff, Jeremiah Fornell and Miranda Fornell to submit to blood tests for the purpose of DNA fingerprinting. However, the Superior Court in its opinion determined the paternity issue insofar as Jeremiah is concerned. *Williams v. Milliken, supra.* Thus, while Jeremiah's DNA fingerprint may be helpful in a test to determine Miranda's paternity, we are constrained to follow the Superior Court's admonition in the case of *Watcher v. Ascero,* 379 Pa. Super. 618, 550 A.2d 1019 (1988) that "blood tests . . . should never be ordered unless it is to establish paternity in a proceeding where paternity is a relevant fact and *has not already been determined in a prior proceeding.*" (emphasis supplied) Therefore, we will not order Jeremiah Fornell to submit to blood tests. We note from the exhibits that Jermiah's blood sample, while helpful, is not necessary to the application of the test.

We also note that while we will permit reopening of the record in this case to allow DNA fingerprinting, we reach no conclusion at this time as to whether plaintiff is the father of Miranda or, even if found to be Miranda's father, where Miranda's best

interest lie insofar as custody is concerned. We will defer those issues to another day.

## ORDER OF THE COURT

And now, June 9, 1989, after consideration of the record including the exhibits and affidavit in support of plaintiff's motion, it is ordered, adjudged and decreed that the motion to reopen record be and it hereby is granted, and it is further ordered, adjudged and decreed that plaintiff, Jerry Wayne Williams, and the child Miranda Nicole Fornell submit to the drawing of samples of blood from their persons for the purpose of conducting DNA fingerprinting tests on the samples. It is further ordered, adjudged and decreed that arrangements for drawing samples shall be made by plaintiff with at least 10 days notice to defendant custodians. Plaintiff shall be responsible for all costs and expenses. Upon completion of the testing and receipt of reports by counsel, further hearing in the matter will be scheduled.