568 A.2d 961

Donna K. CHRISTIANSON

v.

Robert M. ELY, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 5, 1989.

Filed Jan. 8, 1990.

Christopher J. Foust, Milton, for appellant.

Michael T. Hudock, Asst. Dist. Atty., Miffinburg, for appellee.

Before McEWEN, TAMILIA and JOHNSON, JJ.

TAMILIA, Judge:

This is an appeal from a February 2, 1989 Order directing appellant, Robert M. Ely, to submit to blood tests to determine if he is the biological father of Tenaya Beth Christianson.[1] The factual situation which preceded this action is as follows:

Tenaya Christianson was born on August 19, 1985 to appellee, Donna K. Christianson. At the time of Tenaya's conception and birth, appellee was married to and living with Bruce N. Christianson, not party to this appeal but who also was ordered to submit to blood testing. Approximately one and one-half years after the child's birth, the appellee and her husband had apparently separated and appellee on February 27, 1987 filed a complaint in support against her husband seeking child support for all three of the children, including Tenaya, born during the parties' marriage. On March 30, 1987, although an Order for support was entered as to the two older children, there was no disposition made as to Tenaya.[2] Based on this prior complaint, appellant filed preliminary objections to the support complaint against him citing the earlier undisposed of complaint for support against appellee's husband as cause

1. Appellant presents the following questions for our review:
    1. Can a Complainant require any individual to submit to blood tests pursuant to 42 Pa.C.S.A. Section 6133 when:
    (a) she has filed a previous support complaint naming her husband as the father of the child;
    (b) no legal determination was made that her husband, who was married to and had access to her during conception and birth of the child and supported the child until the parties later separated, is in fact, not the father;
    (c) the husband and presumed father may be estopped from denying paternity?
    2. Have appellant's constitutional rights of due process of law and freedom from unreasonable search and seizure been violated by the entry of the *ex parte* order requiring him to submit to an intrusive blood test?
(Brief of appellant at p. 3.)

2. Although the proceedings of the prior support complaint are not part of the record, the trial judge did take judicial notice of them in his Order on this case granting preliminary objections on November 9, 1988.

for dismissal of the complaint against appellant. Subsequently, the trial judge granted preliminary objections to the extent proceedings would be stayed pending disposition of the support complaint against the husband.

Thereafter on November 10, 1988 the district attorney's office for Snyder County filed a petition to withdraw and terminate the support action for Tenaya alleging appellee was then claiming appellant rather than her husband was the child's father. An *ex parte* Order was filed without hearing, allowing appellee to withdraw the support complaint without the issue of paternity having been decided.[3]

On February 21, 1989 the Union County district attorney's office filed the motion for blood tests, granted on February 22, 1989, which is subject of this appeal. The trial judge entered the Order, directing the parties to submit to blood tests, *ex parte*, without a hearing to provide appellant the opportunity to answer the motion. A notice of appeal was filed and petitions for stay or injunction pending appeal were denied by both the trial court (March 22, 1989) and this Court (April 25, 1989).

Initially we must determine if this appeal is properly before us. Both the trial court and appellee contend we are without jurisdiction to consider this case on the merits as the Order from which appellant appeals is neither final, nor interlocutory and appealable as of right. To the contrary appellant contends the Order is final under 42 Pa.C.S.A. § 742, Appeals from courts of common pleas (appellant's brief at 1) and also because appellee previously filed a sworn complaint naming her husband as Tenaya's father and there has been no determination he is not (appellant's brief at 14).

Normally a case is not appropriate for appeal when there has been no ultimate finding on the issue of paternity and secondly, an appeal from an Order to take a blood test is, alone, generally not appealable. However, under the cir-

---

3. These facts are taken from the parties' briefs. We are unable to verify this information as the relevant case record is not before us.

cumstances of this case, appeal has been allowed under the authority of *Myers v. Travelers Insurance Co.*, 353 Pa. 523, 46 A.2d 224, 163 A.L.R. 919 (1946), cited in *Commonwealth v. Weston*, 201 Pa.Super. 554, 556, 193 A.2d 782, 783 (1963). The Order directing the parties to submit to a blood test was inappropriate as the procedure utilized in the court below did not properly present a case which permitted the Order to be issued. To quash the appeal and remand without considering the merits of the appeal at this time would be to permit the court to continue in error, to impose a likely invasion of privacy on appellant, to violate due process and to assure that a subsequent appeal would follow. For the sake of judicial economy, a common sense approach requires our resolution of the fundamental issues presented by this case. When an Order appealed from involves a blood test and the issue presented focuses on whether or not the doctrine of estoppel must be applied to the denial of paternity by a presumptive parent which will control whether or not an Order to submit to blood tests will issue, this Court has treated the Order as appealable. *See Commonwealth ex rel. Goldman v. Goldman*, 199 Pa.Super. 274, 184 A.2d 351 (1962); *Weston, supra.*

In order to avoid error on remand, procedurally this case must progress in the court below with due consideration being given to the requirements of the laws of laches and estoppel. As stated in the summarization of facts, the child was born during wedlock. That fact alone entitles *the child* to the presumption of legitimacy. That presumption may not be lightly turned aside and, as we have stated in *In the Matter of Montenegro, Jr.*, 365 Pa.Super. 98, 528 A.2d 1381 (1987), the conduct of the father (and/or the mother) may operate to estop any further inquiry. Under the circumstances where the father has accepted the child and treated him as his own, he may not thereafter, upon separation, reject paternity and demand a blood test to rebut the presumption. The same must be said for the mother. She cannot hold out her husband to be the father and thereafter, upon separation, charge a different man with paterni-

ty. By denying appellant a hearing, the court ignored the crucial requirement that appellee would need to establish by clear and convincing evidence that she and the husband are *not estopped* from denying her husband's paternity. This would only be shown by proving the husband/father did not accept the child as his (by more than mere denial) and both operated under the belief the child was fathered by someone else. Under these circumstances, an Order for a blood test would not be permissible to overcome the presumption of legitimacy unless it had first been established that the presumptive parent was not estopped from denying paternity. If such estoppel prevailed, then an attack on the presumption would be impermissible and the presumed father alone would have the duty of support as well as rights to visitation and/or custody.[4]

■ Appellee maintains that pursuant to the case of *John M. v. Paula T.*, 377 Pa.Super. 72, 546 A.2d 1162 (1988),

---

**4.** The most recent pronouncement on this issue, which is both definitive and controlling, is expressed in the United States Supreme Court case of *Michael H. and Victoria D. v. Gerald D.*, —— U.S. ——, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989). In that case, Justice Scalia, announcing the judgment of the Court, strongly reaffirmed the common law doctrine of presumption of legitimacy arising out of birth during coverture, and affirmed the Order of the California Supreme Court in denying the putative father, Michael H., visitation rights to the child, Victoria. Blood tests, prior to the court action, conclusively established the probability that Michael was Victoria's father, he had lived with the mother and child for periods of time while the mother was separated from the husband/father and had acknowledged paternity and held himself out as Victoria's father, with the mother's approval.

In the Supreme Court's decision, an action on behalf of Victoria by her child advocate was also dismissed, the Supreme Court declaring she had no standing, there was no liberty interest, due process violation, and under the "rational relationship" test, she could not rebut the presumption of her own legitimacy. The court maintained that only the natural parents may rebut the presumption of legitimacy vis-a-vis each other, because, at that point, the underlying strong historical state policy of protecting the unity of the family is already shaken by the denial of one or the other parent of paternity. The fact that it was established that Michael is the father is irrelevant in the face of the presumption, which is an expression of state policy to protect the unity of the family. Also, in view of that policy, there is no room for *dual* parentage, and unless he *could* be declared the child's father, which is impermissible, Michael has no right of visitation.

once a party raises an issue of paternity, and thereby faces the burden of overcoming a presumption of legitimacy, a blood test must be ordered. This contention flies in the face of a long line of cases down to the present time in which the doctrine of estoppel or laches has been applied to prevent the taking of a blood test or when it has been taken, despite its results, treating as a nullity its application to rebut the presumption of legitimacy. *Paula T.* is a single aberration where it was held that the overwhelming presumption, once having been met by clear and convincing evidence, may still permit the use of a blood test where there is good cause. While the underlying theory espoused by *Paula T.* is subject to question, particularly in view of the fact that it ignored the doctrines of estoppel and laches which have been and continue to be the overriding law in Pennsylvania when we are faced with situations similar to the present, it is, in other ways, clearly distinguishable from this case.

In *Paula T.*, the issue was whether the putative father could obtain rights of visitation to his alleged child, who was conceived during marriage and living with the presumptive father and natural mother, despite the fact that the court found, pursuant to law, the presumption of legitimacy had not been overcome in any respect. The appellant in *Paula T.* had not overcome the presumption by clear and convincing evidence and his only avenue was to request a blood test. The trial court denied this request and was reversed by a panel of this Court, which held that the trial court must make a determination as to whether good cause was shown for the granting of the blood test. It might be suggested that had the trial court considered the doctrine of laches and applied it to a non-parent who alleges paternity but has not exercised a claim in a reasonably expeditious fashion, the result might have been different, particularly where the presumptive father was estopped from denying paternity. However, notwithstanding, this case is not comparable to *Paula T.* as that case concerns a third party attempting to exercise a right rather than the denial of

paternity by the husband in face of the presumption that he is the father, when a child is conceived during marriage. This case and all other cases which deal with this issue concern parents, who were married when the child was born or conceived, which triggered the presumption of parentage and then, after fulfilling the responsibilities and roles of parents for some time, who subsequently attempt to deny that status. This is a scenario which we have consistently and without exception refused to accept by reason of the doctrine of laches or estoppel. While the Uniform Blood Test Act, 42 Pa.C.S.A. § 6131, permits the ordering of the blood test to rebut the presumption of parentage, the parents by their actions may be estopped from availing themselves of that provision and the presumption will prevail.[5] Section 6133, **Authority for test,** provides:

> If any matter subject to this subchapter in which *paternity, parentage* or identity of a child *is a relevant fact,* the court upon its own initiative or upon suggestion made by or on behalf of any person whose blood is involved, ... shall order the mother, child and alleged father to submit to blood tests.

*Id.* (Emphasis added.)[6] When a parent is estopped from denying paternity and the presumption of legitimacy has not been rebutted, paternity is not a relevant fact.

**5.** For this reason we have questions which remain unanswered by *Paula T.* that where the presumption of parentage is collaterally attacked by a third party, if the parents to the marriage raise estoppel, whether a blood test may be ordered in the face of evidence of estoppel.

**6.** The trial court relied on *Parenti v. Parenti,* 263 Pa.Super. 282, 397 A.2d 1210 (1979), and *In re Mengel,* 287 Pa.Super. 186, 429 A.2d 1162 (1981), as authority for ordering the blood test. In *Parenti,* the father requested the blood test as he was separated ten months and divorced six months at the time of birth of the child. The evidence of ten month's separation *before* birth and denial upon the birth met the test of *Commonwealth ex rel. Goldman v. Goldman,* 199 Pa.Super. 274, 184 A.2d 351 (1962), and established parentage as a *relevant* fact in a support action triggering authority to issue an Order for a blood test pursuant to section 6133. Estoppel, therefore, could not be applied against the father. *In re Mengel* has to do with the putative father of an illegitimate child who, by declaratory judgment action, wished to determine whether or not he was the father of the child and requesting a blood test to aid in this determination. There, we held he had

The starting point in this review of our application of the law of estoppel and presumption of legitimacy in relation to the blood test begins with *Commonwealth ex rel. O'Brien v. O'Brien,* 390 Pa. 551, 136 A.2d 451 (1957). In *O'Brien,* the Supreme Court held the blood test act of May 24, 1951, P.L. 402, did not apply to actions brought to obtain support for children born out of wedlock. Thereafter, the legislature repealed the act of 1951 and passed the act of 1961, 42 Pa.C.S.A. 6131 et seq., which is subject of this case and which was slightly modified by amendments in 1976 and 1978. Following the enactment of the 1961 provision, this Court, in *Commonwealth ex rel. Goldman v. Goldman,* 199 Pa.Super. 274, 184 A.2d 351 (1962), held the act of 1961 applied to actions brought for the support of children born during wedlock and suggested that where a child was born during coverture and was accepted by the defendant as his own, he was estopped from denying paternity of that child. In that case, the defendant left the wife shortly after one of the two children in question was born and prior to the birth of the second child. We affirmed the Order directing that a blood test be taken and, therefore, it follows that this Court was convinced the presumption of legitimacy was subject to rebuttal and the actions by the father in leaving the household prevented estoppel from working against him.

In *Weston, supra,* we held that when a child was born during coverture and the father lived with the wife and children for several years after the birth of those children of the marriage, and there was no evidence that he did not accept them as his own children prior to filing a petition, the holding in *Goldman* did not entitle the husband to the granting of his petition for a blood test. The Superior Court in that case held, *"We think it [the trial court] should have refused the petition of the defendant at least until it was shown the defendant had not supported and*

standing and a blood test was appropriate. Neither of these cases are apposite to the present case and reliance by the trial court on them in ordering a blood test was misplaced.

*accepted these children as his own." Id.* 201 Pa.Super. at 556, 193 A.2d at 783 (emphasis added).[7]

This statement clearly establishes the rule which must be applied to this case. Here, we have no evidence of record that the father failed to accept the child, Tenaya, as his own nor any evidence that he took any action whatsoever to establish that he was not her father, such as leaving the family upon the birth of the child, as was the case in *Weston.* Based on appellant's brief it appears there is no testimony or evidence in the record of the presumptive father's denial of either support of the child or fathering of the child during the one and one-half years of the child's existence prior to the separation. The mother, in fact, filed a support action against the father for the support of the child which was held in abeyance until it was withdrawn by the district attorney of Snyder County under what appears to be some manipulation by welfare authorities. There appears to be nothing on the record which indicates that the presumption of legitimacy has been overcome in any fashion whatsoever and particularly not to the degree of clear and convincing evidence which is required in such a case. In this case, contrary to most of the other cases dealing with this issue, it is the mother, by filing an action for support against the appellant, who is denying the husband's paternity. This is clearly no different than a case where it is the father who has denied paternity.

7. The Dissenting Opinion would not permit a hearing on the issue of estoppel as proposed by the majority because the appellee/mother has not pled facts indicating an estoppel. Pursuant to the language quoted in *Goldman, supra,* it appears such an enquiry should be permitted. The procedural posture of this case is such that two claims have been made against different men in different courts. Domestic relations practice does not provide for or invite pleadings, but merely for allegations of jurisdiction and venue. Here the appellee/mother must come forward to rebut the estoppel or she is foreclosed from proceeding with her claim against appellant. Unless a determination is made on this issue, the possibility exists that, with the actions having been dismissed against both men without a finding of paternity, the child will be without support from either. A definitive finding of either estoppel or paternity in this action will be res judicata as to that issue and support proceedings can then move forward as to one or the other of the men.

In *Montenegro, supra,* we held that a putative father, who held himself out to be the child's father by marrying the mother and assuming responsibility for the care of their child, was estopped from denying paternity five years after marriage, and evidence of a blood test proving the putative father was not in fact the natural father was inadmissible to disprove paternity for any purpose. In that case, despite the fact the child was conceived before marriage, the law as provided by 48 P.S. § 167 **Children, legitimacy and termination of paternity,** subsection (b)2 provides that if during the lifetime of the child the father openly holds out the child to be his and receives the child into his home or openly holds the child out to be his and provides support for the child, which shall be determined by clear and convincing evidence, paternity shall be established in the putative father. As we said in *Montenegro,* this section provides a strong policy statement by the legislature that children shall be legitimate and when putative fathers hold themselves out to be the father of a child by marrying the mother and assuming responsibilities for the care of the child, paternity is thereby determined. Evidence of the blood tests, therefore, was inadmissible to disprove paternity for any purpose. *Montenegro* 365 Pa.Super. at 104–106, 528 A.2d at 1384. If this is the case when a child is born out of wedlock or conceived before marriage and the parents act in such a way as to hold the child out to be their child, how much less plausible is it for a mother, after separation, to be able to disclaim a child as being that of her husband when the child was conceived during marriage and they have lived in a family relationship in which the husband apparently held out the child to be his own.

The case exactly on point in relation to the mother's inability to raise the issue of non-paternity is *Seger v. Seger,* 377 Pa.Super. 391, 547 A.2d 424 (1988). In *Seger,* the parties were married at the time of the child's birth and the presumption was that she was the daughter of the husband. When the child was approximately four years old, the husband was told she was not his daughter and despite this

information he continued to support her and hold her out to be his own. Four years later, when the child was about nine years of age, the parties separated and the mother took the child with her to Florida. Following a custody action, in which blood tests were ordered and admitted as evidence, the husband was determined not to be Jessica's biological father but was granted visitation rights. Visitation was never honored by the mother and a further proceeding was held after which the court denied any further visitation because the husband was not the biological father of the child. In reversing the trial court and remanding for a new Order, this Court held that the mother no less than the father, in situations where the man has lived with the mother and has been held out as the father of the child, is subject to the rule which works an estoppel to a disclaimer of paternity. There we stated if a father's conduct works an estoppel on his assertion of non-paternity in a support matter, there is no principal in law which would prevent the same application to a case where the mother informs the father he is responsible for the pregnancy, marries him, assigns paternity to him on the birth certificate, permits him to support the child and assume the parental duties for years and only upon separation, repudiates his paternity. Under these circumstances, permitting a blood test was improper and denying visitation rights was impermissible.

From all of the above, it is clearly apparent that the principle announced in *Paula T.* is not applicable to the facts of this case.

This case must, therefore, be remanded for further evidence to be presented to the court as to the actual relationship of the presumptive father and natural mother and as to whether or not the doctrine of estoppel applies. Only in the event that estoppel does not apply and it appears the father did not accept the child to be his own by holding it out and/or supporting the child, will the mother be permitted to proceed with her claim against the appellant which may be aided by use of the blood test. If there is substantial evidence to the effect that the father has denied paternity

and refused to accept responsibility from the time he was reasonably aware of his non-paternity, then the rule in *Goldman* would apply and permit the taking of the blood test of appellant. Otherwise the presumption of legitimacy has not been rebutted and estoppel must be invoked to prevent the blood test with the issue of paternity settled in favor of the presumptive father.

Order vacated; case remanded for further hearing in conformity with this Opinion.

Jurisdiction relinquished.

JOHNSON, J., dissents.

JOHNSON, Judge, dissenting:

I join so much of the majority's opinion which finds that Donna K. Christianson had the burden of demonstrating that the doctrine of estoppel should not apply before she is permitted to proceed with her complaint for support against alleged putative father Robert M. Ely. I agree with the holding of the majority that, when a parent is estopped from denying paternity and the presumption of legitimacy has not been rebutted, paternity is not a relevant fact.

The only issue brought before this court on this appeal is whether an assistant district attorney, acting on behalf of an alleged complainant, may compel any individual to submit to blood tests pursuant to the Uniform Act on Blood Tests to Determine Paternity, where paternity has not been established as a relevant fact. The panel is in agreement that such compulsion is entirely inappropriate. The majority would remand for further evidence to be presented to the court as to "the actual relationship of the presumptive father and natural mother and as to whether the doctrine of estoppel applies." Majority opinion, page 966. Since I believe the introduction of additional evidence on this issue is unnecessary to our disposition of this appeal, I must respectfully dissent.

After the Snyder County assistant district attorney had filed the Complaint for Support against Robert M. Ely in

this case on July 13, 1988, the court issued its certification and order for transmission to Union County. The Union County court ordered a support conference. Ely filed preliminary objections on August 12, 1988, alleging that a support complaint had been filed in Snyder County on February 27, 1987 against Bruce Christianson, the husband of the complainant, Donna K. Christianson. That earlier complaint sought support for three minor children, including Tenaya Beth Christianson, alleging Bruce Christianson to be the natural father of all three and further alleging the cohabitation between natural father and mother at all times material to a determination of paternity.

Ely further alleged, by way of preliminary objection, that there had been no proceeding concluded by the complainant seeking support from the natural father, Bruce Christianson, her husband at the time of both the birth and conception of Tenaya Beth, Bruce Christianson being the presumptive father of Tenaya Beth Christianson.

When oral argument was held on the preliminary objections on November 4, 1988, the Union County assistant district attorney conceded that he had no meritorious response to Ely's preliminary objections. The court took judicial notice of the Snyder County proceedings which did not include any disposition of the claim for support for Tenaya Beth. The Union County court then stayed all proceedings pending disposition of the support claim for Tenaya asserted against Bruce Christianson in Snyder County.

A thorough review of the entire record establishes that the next pleading or action taken in this case following the stay of proceedings is the Motion for Blood Tests presented *ex parte* on February 21, 1989. The motion is acknowledged by the assistant district attorney who presented the motion, Michael T. Hudock. Paragraph 6 of the Motion alleges:

6. That the Plaintiff has reported that Bruce N. Christianson is not the father of the child and that Robert M. Ely is the father of the child.

The motion contains no reference to the order entered November 9, 1988 staying all proceedings or the finding of the court requiring disposition of the Snyder County claim before any complaint could be fairly pursued against any other alleged father, including Robert M. Ely. If counsel was aware of the material facts regarding the Snyder County action, indexed at No. 36, 1987, those facts were not included in the Motion for Blood Tests presented on February 21, 1989. The order entered the next day by the court is also silent as to the status of the Snyder County proceedings as they relate to Bruce Christianson's obligation for support.

Here, the trial court recognized on November 9, 1988 that it was improper to proceed against a putative father when there remained outstanding a support action in another county claiming support from the presumptive father, with whom the complainant had been living during the period of conception and birth. From the record, the same court, on February 22, 1989, sought to compel a third person, Robert Ely, to submit to blood testing on the *ex parte* request of the assistant district attorney, based on the hearsay statements of the complainant, and with no judicial ruling on record that Bruce Christianson was not the father.

Our responsibility on this appeal is not to determine who might be the father of Tenaya Beth Christianson. I am satisfied that paternity is not a relevant fact where the presumption of legitimacy has not been rebutted. If, as is suggested in the Application for Stay or Injunction Pending Appeal filed by Ely in the trial court on March 20, 1989, the Snyder County proceeding against the natural father was withdrawn *ex parte* by the Snyder County district attorney's office, then the presumption of the natural father's paternity has clearly not been rebutted, and paternity remains something other than a relevant fact in *this* proceeding.

The majority would permit the complainant to return to the Union County court to litigate a matter that appears to have been withdrawn from the consideration of the Snyder

County court by the complainant. It seems that the majority would seek to have the Union County court consider whether there is substantial evidence to the effect that the father has denied paternity and refused to accept responsibility, even though the father is not a party to the Union County proceeding so far as the record would disclose. The only allegation in the Motion for Blood Tests to support a further evidentiary hearing is the assistant district attorney's averment that the complainant "reported that Bruce N. Christianson is not the father of the child and that Robert M. Ely is the father of the child."

For me, that does not raise a *prima facie* claim sufficient to rebut the presumption of legitimacy. There is nothing to prevent the complainant from coming forth with a proper claim should she so elect. On the record before us, I would find, as does the majority, that the order directing blood tests was not supported by the record inasmuch as paternity was not a relevant fact. I would reverse the order. Since paternity is not a relevant fact, I conclude it would be inappropriate for this court to require the appellant to remain subject to the actions of the assistant district attorney until such relevancy might, perchance, be developed. Therefore, I respectfully dissent with regard to the remand for further proceedings.