**Nearhood v. Gunter**

166

C.P. of Clearfield County, no. 98-248-SD.

*Richard Mattern,* for plaintiff.
*James Naddeo,* for defendant.

AMMERMAN, *J.,* March 1, 1999—The above-captioned matter came before this court in order to resolve the issue of whether William Gunter, defendant, should be required to undergo paternity testing for child support purposes.[1] Both parties are represented by counsel, and hearing was held before the undersigned on December 8, 1998 and January 12, 1999. Briefs having been timely received, the matter is set for decision.

On October 6, 1993, the child at issue, Kelly Mariah Nearhood, was born to Andrea Nearhood, Mother, at a time when she was married to Terry Nearhood.[2] The undisputed testimony of Mother and Mr. Nearhood shows that the two did not have sexual relations for a number of months around the conception period. Mr. Nearhood knew that he was not Kelly's father because as he stated at the hearing, "it wasn't possible." Mother's extramarital affair with defendant began around October

1. Domestic Relations PACSES case no. 998100104.
2. The Nearhoods were married on August 9, 1989.

1992. Mother and defendant both agree that they had sexual intercourse at and around the time of conception.

Mother told Mr. Nearhood that he was not the child's father during her pregnancy, and she informed defendant that she was carrying his child. After Kelly was born, defendant continued to call Mother, requested to see photographs and wanted to see the child in person. Even after defendant married in February 1995, he continued to occasionally contact Mother regarding Kelly.

Following the child's birth, Mr. Nearhood supported Kelly while the family remained together, and Kelly referred to him as her dad. He continued to pay a portion of her day care expenses[3] and gave Kelly gifts even after separating from Mother. Mother and Mr. Nearhood separated on or about August 18, 1996, and were divorced on April 18, 1997.[4] Currently, Mr. Nearhood does not have a relationship with Kelly, having terminated his contact following Mother's filing for support.

Mother first filed for support against defendant on April 29, 1998. On May 5, 1998, Mother filed a support action against Mr. Nearhood. After Mr. Nearhood was excluded as the father by genetic testing,[5] the paternity action against defendant was reinstated on August 7, 1998.

---

3. Defendant's exhibit 2 shows Child Development & Family Council of Centre County's cash receipts for the period January 1997 through May 1998. Mr. Nearhood did make payments in 1997 and 1998. Defendant's exhibits 1 and 3 are emergency contact information sheets that list Mr. Nearhood as Kelly's father.

4. Divorce decree was entered by the Court of Common Pleas of Clearfield County (no. 96-543-CD).

5. Genetic testing was conducted without objection from either Mother or Mr. Nearhood, neither of whom were represented by counsel.

Defendant has argued that Mother has failed to rebut by clear and convincing evidence the presumption that Kelly is Mr. Nearhood's daughter, and that Mother is estopped from pursuing her claim for support against him.

Mother's position is that the presumption of paternity is an anachronistic doctrine and not applicable in this case because there are no intact family considerations. Further, Mother has argued that the testimony and evidence at the hearing is not strong enough to estop Mother from requesting the genetic testing of defendant.

In Pennsylvania, the presumption of paternity historically has been strong. *Brinkley v. King,* 549 Pa. 241, 244, 701 A.2d 176, 177 (1997). The well-established presumption that a child conceived or born during the marriage is presumed to be the child of the marriage may be overcome by clear and convincing evidence either that the presumptive father had no access to the mother or the presumptive father was physically incapable of procreation at the time of conception. *Id.* "Clear and convincing" means "testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Paulshock v. Bonomo,* 443 Pa. Super. 409, 413, 661 A.2d 1386, 1388 (1995) (citing *Matter of Sylvester,* 521 Pa. 300, 304, 555 A.2d 1202, 1203-1204 (1989)).

However, "time-worn principles of law may not be relevant where the family has been broken down, or where the structure does not conform to that contemplated by the law or doctrine in question." *Martin v. Martin,* 710 A.2d 61, 62 (Pa. Super. 1998). The Superior Court recently stated that "the presumption of paternity is not to be blindly applied to all cases in which the husband and wife were married at the time." *Green*

*v. Good,* 704 A.2d 682 (Pa. Super. 1998). However, in the instant case, there is no question but that Kelly was conceived and born into an intact family since Kelly was living with the Nearhoods for years before their separation. For purposes of the legal analysis in this case, there is an intact marital unit in which our society has an interest to protect. *Amrhein v. Cozad,* 552 Pa. 236, 714 A.2d 409 (1998). Therefore, the presumption of paternity applies to the case.

The court also believes that clear and convincing evidence has been presented which rebuts the presumption of paternity. As noted, the testimony of both Mother and Mr. Nearhood agreed in that the couple was not having intercourse with each other for many months both prior and after the period of conception. Although Mr. Nearhood was not serving a tour of duty at sea like the husband of the plaintiff in *Green, supra,* the evidence clearly indicates that Mr. Nearhood did not have access to Mother. Therefore, the court finds the presumption of paternity to be properly rebutted by Mother.

If the family unit remains intact up to and beyond the birth of the child, despite evidence that rebuts the presumption of paternity, estoppel may apply. *Zadori v. Zadori,* 443 Pa. Super. 192, 661 A.2d 370 (1995). Estoppel in paternity actions has been defined as: "merely the legal determination that because of a person's conduct (*e.g.,* holding out the child as his own, or supporting the child) that person, regardless of his true biological status, will not be permitted to deny parentage, nor will the child's mother who has participated in this conduct be permitted to sue a third party for support, claiming that the third party is the true father. As Superior Court has observed, the doctrine of estoppel in paternity actions is aimed at 'achieving

fairness as between the parents by holding them, *both* mother and father, to their prior conduct regarding the paternity of the child.' " *Freedman v. McCandless,* 539 Pa. 584, 591-92, 654 A.2d 529, 532-33 (1995). (emphasis in original) (footnotes omitted) (citation omitted)

Therefore, the determination of the relationship of the parties based upon the facts is critical to a resolution of any paternity claim. *Dettinger v. McCleary,* 438 Pa. Super. 300, 304, 652 A.2d 383, 385 (1994).

In *Martin v. Martin,* 710 A.2d 61 (Pa. Super. 1998), the facts indicated that Mr. Martin contested paternity of his wife's child. Mr. Martin's name was placed on the birth certificate without objection, they had lived together as a family and Mr. Martin signed "Daddy" to at least one card to the child. The evidence showed that Mr. Martin was unemployed and provided little financial support and offered little caretaking regarding the child. Mr. Martin left the parties' residence approximately 10 months after the child's birth, and had acknowledged the child for one and one-half years, after which time he requested the blood tests. The Superior Court stated, "[a] name on a certificate does not create a father/child relationship where one in fact does not exist" and concluded that the evidence did not support a finding of paternity by estoppel. *Id.* at 65.

As noted, estoppel may apply depending upon the court's determination as to the relationship between the presumptive father and natural mother. *Jones v. Trojak,* 535 Pa. 95, 105, 634 A.2d 201, 206 (1993) (citing *Christianson v. Ely,* 390 Pa. Super. 398, 403, 568 A.2d 961, 963 (1990)) ("In *Christianson,* a mother was estopped from challenging the paternity of her husband without exhibiting that he had denied paternity and refused to accept responsibility for the child from the time he was reasonably aware of nonpaternity.").

"[A mother] cannot hold out her husband to be the father and thereafter, upon separation, charge a different man with paternity." *Id.*

Blood testing of a putative father or the results thereof will be permitted or reviewed only when the doctrine of estoppel does not apply. *Id.* at 106, 634 A.2d at 206. It should also be pointed out that although the presumption of paternity and paternity by estoppel are related, they are distinct concepts. *Paulshock v. Bonomo,* 443 Pa. Super. 409, 412, 661 A.2d 1386, 1387 (1995).

Mother is estopped from claiming that anyone other than her former husband, Mr. Nearhood, is Kelly's father. The facts show that Mother was honest about her pregnancy, and she and Mr. Nearhood lived with Kelly as a family for well over two years following the child's birth. Fully aware of the reality of the situation, Mr. Nearhood allowed his name to be placed on the birth certificate and day care emergency contact forms. Mother acknowledged that Kelly and Mr. Nearhood referred to and treated each other as daughter and father. Mr. Nearhood was employed during the time that the family was intact, and supported both Kelly and his wife. His conduct in this regard is without a doubt admirable. Notwithstanding the issue of biology as determined by the genetic testing, the results of those tests are not admissible and Mr. Nearhood is also estopped from claiming that he is not Kelly's father. The fact that he has seen fit to discontinue contact with the child is unfortunate, but ultimately irrelevant.

Wherefore, the court enters the following:

## ORDER

Now, March 1, 1999, consistent with the foregoing opinion, it is the order of this court as follows:

(1) Plaintiff is estopped from asserting a paternity claim regarding the child, Kelly M. Nearhood, against the defendant.

(2) The complaint for support filed by plaintiff, Andrea Nearhood, against defendant, William Gunter, is dismissed, and defendant shall not be required to undergo paternity testing.

(3) Terry Nearhood is estopped from denying parentage of Kelly M. Nearhood. The results of genetic testing of Mr. Nearhood relating to his parentage are not admissible evidence.

(4) The Domestic Relations Office shall reinstate the paternity/support action filed by plaintiff on May 5, 1998 against Terry Nearhood. No support obligation established against Mr. Nearhood shall be retroactive prior to the date of reinstatement.