IN THE MATTER OF JAMES B. AVIS, AN ATTORNEY AND
COUNSELLOR AT LAW.

Argued February 11, 1952—Decided March 3, 1952.

VANDERBILT, C. J. (dissenting). The respondent does not appear before the court as a first offender. The gravamen of the complaint against him now is that he has wrongfully appropriated to his own use moneys received by him as the attorney of a client and that only after a complaint made by the client to this court did he make restitution. The proofs establish that the misappropriation took place on October 24, 1950, six months after he had been privately reprimanded by this court for a similar breach of the Canons of Professional Ethics. On the former occasion he was involved in a dispute with a client over a fee paid for services to be rendered. He finally agreed with his client to refund a substantial portion of the fee, giving his check in payment thereof. The check was drawn on an account in which there were not sufficient funds and on presentation it was dishonored. The client in that transaction, as in the one now before us, did not recover his money until a complaint was made to this court. At the conclusion of the reprimand Mr. Avis volunteered this:

"May I say a few words? I realize, gentlemen, I made a very, very serious mistake. I assure you that I appreciate from the bottom of my heart the action you have taken, and wish to assure you you will have no further difficulty with me. I thank you very much. May I retire?"

The warning given by the court went unheeded. Mr. Avis' solemn assurance to the court was quickly forgotten and he

has again brought disrepute upon the profession as a result of which he again stands before the court on charges.

The facts are undisputed. On September 28, 1949, a school bus owned and operated by the Board of Education of East Greenwich Township was involved in a collision with an automobile owned and operated by George Clevenger, with the result that several children riding on the bus were injured. The respondent who represented the insurance company covering the board of education against liability was also retained by the board of education to bring an action on its behalf against Clevenger to recover for damages to the bus. Clevenger counterclaimed and brought a separate action against the bus driver, and Avis also appeared on his behalf. The matters were settled before trial and mutual covenants not to sue were executed on October 16 and 17, 1950, and Clevenger's attorney mailed Avis his check in the sum of $575 in payment of the settlement and made payable to "James B. Avis, attorney for the Board of Education of East Greenwich Township." By the agreement between Avis and the board of education, Avis was to retain $75 in payment of his fee and the balance of $500 was to be turned over to the board. Avis endorsed the check and deposited it in a checking account in his name as attorney on October 24, 1950. The bank statement of his account showed that on the same day the net balance in the account was reduced below $500 (the sum to which the board was entitled) and thereafter never reached or exceeded that figure until April 9, 1951, when the board was actually paid. Indeed, on October 27th, three days after the deposit in question, the account was overdrawn and remained overdrawn for a period of some 17 days.

On December 19, 1950, the district clerk of the board of education wrote to Avis complaining that the settlement had not been received and inquiring as to the status of the matter. This and similar letters dated January 11, 1951, February 21, 1951, and February 24, 1951, were all ignored by Avis and went unanswered. On March 26, 1951, the

district clerk wrote a letter of complaint to the court, pointing out that Avis had never delivered the funds owing and had also failed to turn over the covenants not to sue. The complaint was referred to the Ethics and Grievance Committee for Gloucester County on April 3, 1951, and on April 6, 1951, Avis delivered his check to the board of education, almost six months after he had misappropriated the funds.

It should be noted that the record discloses that Avis failed to cooperate in the hearings before the Ethics and Grievance Committee. Indeed, despite the requirements of *Rule* 1:9–4(c), the repeated requests of the secretary of the committee in writing and by telephone and his own promises to comply, he failed to file an answer within the ten-day period required by the Rules. It was only after the secretary brought the matter to the attention of the court and Avis was directed to file an answer that he complied.

The defenses presented by Avis not only fail to meet the charges made against him but again demonstrate his lack of those attributes of character so essential in any man who is to be recognized by society as meriting that special trust and confidence which must be the cornerstone of the relationship between attorney and client. Avis testified he failed to turn over the money promptly because the insurance company did not wish him to prejudice their chances of effecting favorable settlements in claims for damages made against the bus driver on behalf of the children injured in the collision. The only representative of the insurance company to testify denied having made any such request. In any event, how could the settlement made by Clevenger with the board have prejudiced the company's defense to the claims of the children? The board was receiving a substantial settlement predicated in law on Clevenger's negligence and on the absence of contributory negligence in the board or in the bus driver. Such a settlement would accordingly be in complete accord with the insurance company's position that the board and the bus driver were not responsible for the injuries sustained by the children. At the hearing before us

Mr. Avis said of this explanation: "Looking at it now, it doesn't look reasonable."

At a further hearing on December 6, 1951, Avis, when confronted with the fact that he had taken his client's funds from his bank account immediately on depositing them, testified that although he did not have any other bank account in his individual name he did maintain a joint account in a Philadelphia bank with his wife in the name "Hazel M. Avis or James B. Avis" in which the balance never went below $2,000 during the period in question. He was asked to produce the records, and did so at a hearing held on December 12, 1951. He then made an "explanation." The account in question in fact was in his wife's name alone. She had agreed to make it a joint account, but "either delayed doing it, or changed her mind." Avis then insisted he had at least $500 of his money in the Philadelphia account at all times, but he offered no proof of this beyond his own word. He evidently could not convince himself that this was so for he also claimed to have at least that much in cash in his safe. I find this statement equally unconvincing. The court has heretofore made it plain that it will not accept the easy alibi of "money in the safe." All of his excuses for ignoring his client's repeated demands for payment of the funds that he had collected for him are entirely unconvincing, but even assuming that they are true they do not justify withholding a client's funds for nearly six months and then paying them over only after the matter has been brought to the attention of the court and by the court to his attention. The largest bank account imaginable is no justification for an attorney's failing to turn over to his client money due the client.

The defendant's conduct reveals a flagrant violation of Canon 11 of the Canons of Professional Ethics:

"The lawyer should refrain from any action whereby for his personal benefit or gain he abuses or takes advantage of the confidence reposed in him by his client.

Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him."

The respondent did abuse and take advantage of the confidence reposed in him by his client. He did not report and account promptly for the money he collected for his client. He did commingle his client's funds with his own and he did use the money for his own purposes. As previously noted, the respondent had been reprimanded only six months before by this court for similar unethical and unprofessional conduct. The record before this court and the attitude and defenses of the attorney here and before the Ethics and Grievance Committee demonstrate in my opinion that the respondent cannot be safely permitted to continue in the practice of law. The rights and privileges bestowed on an attorney by the court are accompanied by fundamental and inescapable obligations of the attorney to the courts and society in general and to his clients in particular. To permit an attorney who has twice shown that he cannot be trusted to fulfill these duties and obligations to continue to practice is, in my opinion, unfair not only to the public but also to the honorable members of the profession. In the past three and a half years we have had to impose discipline in 38 cases of which 12 have involved the appropriation of client's funds. It is not just that 38 members of the bar should besmirch the representation for honesty of over 7,700 lawyers who are practicing their profession with integrity and devotion to the interests of their clients.

I therefore vote to strike the name of the respondent from the rolls of attorneys and counsellors of the court.

*To suspend for three months and until further order*— Justices HEHER, OLIPHANT, WACHENFELD and BURLING—4.

*To disbar*—Chief Justice VANDERBILT—1.