**Maryke Faessen BELTRAN, Appellee,**

v.

**Philip J. PIERSODY, Appellant.**

Superior Court of Pennsylvania.

Submitted April 26, 1999.

Filed March 6, 2000.

Matthew E. Fischer, Reading, for appellant.

Thomas L. Klonis, Reading, for appellee.

Before KELLY, LALLY–GREEN and OLSZEWSKI, JJ.

KELLY, J.:

¶ 1 Appellant, Philip Piersody ("Piersody") appeals from the trial court's order granting intervenor status, in an on-going custody action, to Raymond Beltran ("Beltran"). We hold that the order granting intervenor status to Beltran is interlocutory and unreviewable at this time, as the trial court has not yet rendered a final determination on the custody issues. Accordingly, we quash.

¶ 2 The relevant facts and procedural history of this case are as follows. Piersody and Maryke Faessen Beltran ("Mother") have been engaged in a ten-year custody battle over J.P., who was born out of wedlock in 1989. Piersody and Mother never married. However, Piersody readily presumed paternity, gave his last name to the child, obtained partial custody, and provided child support. At the time of conception, Mother had also been engaged in an on-going sexual relationship with Beltran. Mother subsequently married Beltran and later bore him a child. After the birth of her second child, Mother pri-

vately questioned whether Piersody was actually the father of J.P. In a New Matter response to one of the many contempt actions filed between Mother and Piersody, Mother even went so far as to assert that Piersody was not the father of J.P.

¶ 3 Meanwhile, Mother and Beltran obtained DNA testing that concluded Beltran was J.P.'s biological father. In 1997, Mother petitioned the court for a declaratory judgment to establish Beltran as the biological father of J.P. Following consideration of the evidence, the court held that Beltran was not estopped from claiming he was J.P.'s biological father and the court adjudicated Beltran the biological father of J.P. The court did not adjudicate any existing rights and duties of Piersody as to the child. Piersody appealed the adjudication of Beltran as the biological father of J.P. This Court dismissed the appeal with prejudice, because Piersody had neglected to file post-trial motions following the declaratory judgment action.

¶ 4 Following dismissal of Piersody's appeal from the declaratory judgment, Beltran filed a petition to intervene in the ongoing custody action between the parties. Relying upon the earlier paternity ruling in Beltran's favor and Pa.R.C.P. 1915.6, the trial court declared that Beltran was a parent whose parental rights have not been previously terminated and granted his petition to intervene. This appeal followed.

¶ 5 On appeal, Appellant raises this issue for our review:

WHETHER THE DEFENSE OF 'ESTOPPEL' CAN BE RAISED IN ACTIONS BROUGHT UNDER Pa.R.C.P. 1915.6?

Piersody's Brief at 6.

¶ 6 Preliminarily, we must determine whether this appeal is now properly before us.

Under Pennsylvania law, an appeal may be taken from: (1) a final order or an order certified by the trial court as a final order (Pa.R.A.P.341); (2) an interlocutory order as of right (Pa.R.A.P. 311); (3) an interlocutory order by permission (Pa.R.A.P. 312, 1311, 42 Pa. C.S.A. § 702(b)); (4) or a collateral order (Pa.R.A.P.313). The question of the appealability of an order goes directly to the jurisdiction of the Court asked to review the order.

*Pace v. Thomas Jefferson Univ. Hosp.*, 717 A.2d 539, 540 (Pa.Super.1998). A final order is any order that disposes of all claims and all parties, is expressly defined as a final order by statute, or is entered as a final order pursuant to the trial court's determination. Pa.R.A.P. 341(b)(1)–(3). The Note following Rule 341 provides in pertinent part:

The following is a partial list of orders that are **no longer appealable as final orders** pursuant to Rule 341 but which in an appropriate case might fall under Rules 312 (Interlocutory Appeals by Permission) or 313 (Collateral Orders) of this Chapter:

\* \* \*

(4) an order denying a party the right to intervene.

Pa.R.A.P. 341. Note (Emphasis added). Further, "a **custody** order is considered final and appealable only if it is both: (1) entered after the court has completed its hearings on the merits; and (2) intended by the court to constitute complete resolution of the custody claims pending between the parties." *G.B. v. M.M.B.*, 448 Pa.Super. 133, 670 A.2d 714, 720 (1996) (*en banc* ) (emphasis added).

¶ 7 In the instant appeal, Piersody challenges the order of the trial court **granting** intervenor status to Beltran, as biological father of J.P., pursuant to Pa.R.C.P. 1915.6, in the ongoing child custody dispute. We understand how an order **denying** a party the right to intervene could have been considered a final, appealable order before the rule change or how it may, under certain circumstances, qualify as a collateral order. However, we have

found no case law or rule stating that an order **granting** intervenor status under Rule 1915.6 has ever been considered an immediately appealable order. Moreover, the order in question was generated in ongoing child custody proceedings. Thus, the order on appeal cannot qualify as a final order as well because it was entered before the court had completed its hearings on the merits and was not intended by the court to constitute a complete resolution of the custody claims pending between the parties. *See G.B., supra.*

¶ 8 Appellant simply does not provide any statement of jurisdiction or suggest grounds for this Court to consider the order on appeal as final under Pa.R.A.P. 341. Here, the order appealed from does not dispose of all claims or all parties involved in the case; it is not one which is expressly defined as a final order by statute; and it was not entered as a final order pursuant to subdivision (c) of Rule 341. *See* Pa.R.A.P. 341 (stating, in absence of express determination that immediate appeal would facilitate resolution of entire case, where order or other form of decision adjudicates fewer than all claims and parties, it shall not constitute final order); *G.B., supra.* Nothing in the record provided to us on appeal demonstrates that Appellant requested certification by the trial court under Rule 341(c)(3) or sought this Court's permission under Rule 312. Thus, Appellant filed his appeal without court certification under Rule 341(c)(3) and without permission of this Court under Rule 312. Furthermore, the order appealed from is not among those listed under Rule 311 as interlocutory as of right. Accordingly, the order on appeal must qualify as a collateral order under Rule 313 to warrant immediate review.

> A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparable lost.

Pa.R.A.P. 313(b). Our Supreme Court has recently explained:

> Rule of Appellate Procedure 313 sets forth a narrow exception to the general rule that only final orders are subject to appellate review. Under this exception, an interlocutory order is considered "final" and immediately appealable if (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost. This third prong requires that the matter must effectively be unreviewable on appeal from final judgment.

*Commonwealth v. Wells*, 553 Pa. 424, 427, 719 A.2d 729, 730 (1998) (internal citations omitted). All three factors set forth in Rule 313 **must** be met to qualify as a collateral order for appeal purposes. *Pace, supra* at 541 (citing *McGourty v. Pennsylvania Millers Mut. Ins. Co.*, 704 A.2d 663, 665 (Pa.Super.1997)). In *McGourty*, a panel of this Court cautioned:

> The collateral order doctrine must be construed narrowly in order to "protect the integrity of the fundamental legal principle that only final orders may be appeal. To hold otherwise would allow the collateral order doctrine to swallow up the final order rule ... causing litigation to be interrupted and delayed by piecemeal review of trial court decisions...."

*Id.* at 665 (citation omitted).

■ ¶ 9 An order is not separable and collateral from an action if it has the potential to decide at least one issue in a case. *Pace, supra* (citing *Van der Laan v. Nazareth Hosp.*, 703 A.2d 540 (Pa.Super.1997)). Citing *Commonwealth v. Myers*, 457 Pa. 317, 322 A.2d 131 (1974), the *Wells* Court reiterated that an order is not immediately appealable unless it can be said that denial of immediate review would render impossible any review whatsoever of the appellant's claim. *See also*

*Ben v. Schwartz*, 556 Pa. 475, 729 A.2d 547 (1999) (stating that for purposes of Rule 313, it is **not sufficient** that issue for which review is sought is important to particular party; it must involve rights deeply rooted in public policy going beyond particular litigation at hand).

¶ 10 In the present case, the joinder of Beltran in the custody action has the potential to resolve issues related to custody, support and visitation. *See Pace, supra.* Further, the denial of immediate review of the joinder order will not cause Piersody's claim to be irreparably lost, as he can seek review in an appeal from a final custody order. *See Wells, supra; Ben, supra.* For these reasons, we hold that the order in question also fails to qualify as a collateral order for purposes of interlocutory review under Rule 313.

¶ 11 Moreover, the order at issue granted intervenor status to the child's biological father[1] pursuant to Pa.R.C.P.1915.6, which provides in pertinent part:

**RULE 1915.6 JOINDER OF PARTIES**

(a)(1) If the court learns from the pleadings or any other source that a parent whose parental rights have not been previously terminated or a person who has physical custody of the child is not a party to the action, it **shall** order that the person be joined as a party. . . .

Pa.R.C.P.1915.6 (emphasis added). The joinder prescribed in the rule is mandatory as joinder of necessary parties. *See* Rule 1915.6 Explanatory Comment—1994.[2] Moreover, we note that the rule allows only for the joined party to dispute the joinder. *See* Pa.R.C.P.1915.6(a)(2), (3). Thus, we fail to see how the principles of estoppel articulated and relied upon by Piersody would apply to the specific issue of joinder or whether the trial court had

any choice but to join Beltran in the custody action, where Beltran is the child's biological father as a matter of law and his parental rights have not been terminated. However, we do not decide this issue or whether estoppel should apply when the court determines the rights and duties of all the parties in light of J.P.'s best interests.

¶ 12 Following our review of the record, the briefs of the parties, and the relevant law, we see no basis for our Court's jurisdiction at this time. The order at issue in this case is interlocutory, and the matter as a whole is not yet reviewable. Accordingly, we quash this appeal on jurisdictional grounds and deny as moot Appellee's motion to quash.

¶ 13 Appeal quashed. Case remanded for further proceedings. Jurisdiction is relinquished.

¶ 14 Judge OLSZEWSKI filed a dissenting opinion.

OLSZEWSKI, J., Dissenting.

¶ 1 The majority dismisses this appeal as interlocutory and thus inappropriate for review. While I agree that it is interlocutory, I would reach the merits. I therefore respectfully dissent.

¶ 2 While it is true that "[o]rdinarily, an order permitting intervention is interlocutory and not appealable," *M.N.C. Corp. v. Mount Lebanon Med. Ctr.*, 334 Pa.Super. 359, 483 A.2d 490, 492 (1984) *rev'd on other grounds*, 510 Pa. 490, 509 A.2d 1256 (1986); *see also In Re Manley*, 305 Pa.Super. 332, 451 A.2d 557, 559 n. 5 (1982), I would not strictly apply the rule in this particular case. I recognize the importance of our procedural rules normally, but this case is far from normal. It is a complicated custody dispute that has dragged through the

---

1. Any issue of Beltran's biological parentage was decided in the prior Declaratory Judgment action and is, therefore, *res judicata. See Beltran v. Piersody*, No. 1427 Philadelphia 1997 (unpublished judgment order filed September 18, 1997) (dismissing appeal from Declaratory Judgment action which confirmed biological parentage of Beltran).

2. The rule makes no distinctions with respect to the meaning of "parent."

courts for years; this appeal alone has taken several months. I refuse to punish the litigants or the child further by strictly adhering to the rule. Because I believe that judicial economy and fairness require us to reach the merits, I now do so.

¶ 3 The court below determined that Beltran is J.P.'s biological father, but stopped short of bestowing parental rights on Beltran. Piersody contends that despite the judicial declaration of J.P.'s biological heritage, Beltran is estopped from being declared J.P.'s "parent." He argues that Beltran is thus not properly permitted to intervene under Pa.R.C.P.1915.6, which requires the court to join "a parent whose parental rights have not been previously terminated." Pa.R.C.P.1915.6(a)(1). I agree.

¶ 4 Admittedly, DNA testing confirmed that Beltran is J.P.'s biological father. It is Piersody, however, who has served as the actual father of the child. Piersody has consistently accepted paternity, interacted with the child extensively as a father, provided support since 1990, and given the child his last name. In contrast, Beltran's sole basis for asserting a parental interest is a court declaration that he is biologically linked to the child.

¶ 5 Our Supreme Court has addressed the method of analysis of the presumption of paternity and estoppel.

> [T]he essential legal analysis in these cases is twofold: first, one considers whether the presumption of paternity applies to a particular case. If it does, one then considers whether the presumption has been rebutted. Second, if the presumption has been rebutted or is inapplicable, one then questions whether estoppel applies. Estoppel may bar either a plaintiff from making the claim or a defendant from denying paternity. If the presumption has been rebutted or does not apply, and if the facts of the case include estoppel evidence, such evidence must be considered. If the trier of fact finds that one or both of the

parties are estopped, no blood tests will be ordered.

*Brinkley v. King*, 549 Pa. 241, 701 A.2d 176, 180 (1997) (plurality decision). The presumption is that a child born into an intact marriage is presumed to be the husband's child. *See Strauser v. Stahr*, 556 Pa. 83, 726 A.2d 1052, 1053 (1999). "[T]he presumption can be rebutted only by proof either that the husband was physically incapable of fathering a child or that he did not have access to his wife during the period of conception." *Id.* at 1054. Here, there is no presumption because J.P. was not born into an intact marriage. I therefore turn to estoppel.

¶ 6 Estoppel bars the introduction of medical evidence in instances where a mother "seeks and accepts support of a child from one man who she claims is the father and then seeks to establish that another is the child's father." *Strayer v. Ryan*, 725 A.2d 785, 786 (Pa.Super.1999). In other words:

> the conduct of the father (and/or the mother) may operate to estop further inquiry. Under the circumstances where the father has accepted the child and treated him as his own, he may not thereafter, upon separation, reject paternity and demand a blood test to rebut the presumption. The same must be said for the mother. She cannot hold out [one man] to be the father and thereafter, upon separation, charge a different man with paternity.

*Christianson v. Ely*, 390 Pa.Super. 398, 568 A.2d 961, 963 (1990); *see also Fish v. Behers*, 741 A.2d 721 (Pa.1999) (holding that a wife was estopped from asserting that the biological father of her child was indeed the true father of that child after she held out her husband as the child's father for several years). Here, by his actions, Piersody established himself as the presumptive parent, and Mother acquiesced to this relationship for at least the first four years of J.P.'s life.

¶ 7 Nor does the recent medical proof that Beltran is J.P.'s biological father

change anything. "[A] blood test [does not] overcome the presumption unless ... the presumptive parent was not estopped from denying paternity." *Christianson*, 568 A.2d at 963. In the case at hand, Piersody is the presumptive parent, and he is now estopped from denying paternity. Therefore, J.P.'s biological heritage is irrelevant, and "the presumed father alone [has] the duty of support as well as rights to visitation and/or custody." *Id.*

¶ 8 Because Beltran could not assert any parental interests in the first instance, he has not met Rule 1915.6's requirements. Again, Rule 1915.6 requires the court to join "a parent whose parental rights have been previously terminated." Pa.R.C.P. 1915.6(a)(1). Beltran is not "a parent whose parental rights have been previously terminated," because he never had parental rights. Moreover, he is unable to prevail in an action to assert parental rights, and therefore has no standing to intervene in an action reserved for those who may legitimately assert those rights. *See, e.g., Michael H. v. Gerald D.*, 491 U.S. 110, 126 n. 5, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989) (stating that a person must have a "substantive right to a parental relationship" in order to have standing to assert that claim). It was therefore improper for the lower court to permit Beltran to intervene in the custody action and interfere with Piersody's lawful exercise of his parental rights with regard to J.P.[3]

¶ 9 I therefore would reverse.

---

**3.** I also note that it is impossible for J.P. to have three parents. While a child may have two mothers or two fathers, *see J.A.L. v. E.P.H.*, 453 Pa.Super. 78, 682 A.2d 1314 (1996) (parties by their conduct created a parent-like relationship between appellee's homosexual partner and her biological child, thus giving partner standing to seek custody), he cannot have two fathers and one mother. *See Michael H.*, 491 U.S. at 130–31, 109 S.Ct. 2333 (stating that "multiple fatherhood has no support in the history or traditions of this country"). Until our legislature recognizes a different structure to the basic family unit, J.P. has two parents—Piersody and Mother.