**[J-27-2023]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| J.C.D., III AND A.M.D., | : | No. 13 MAP 2023 |
| | : | |
| Appellees | : | Appeal from the Order of the |
| | : | Superior Court at No. 1449 MDA |
| | : | 2022 dated November 14, 2022 |
| v. | : | Quashing the appeal from the York |
| | : | County Court of Common Pleas, |
| | : | Domestic Relations, order dated |
| A.L.R. AND T.A.D.-R., | : | October 6, 2022, at |
| | : | No. 2022-FC-1432-03. |
| Appellants | : | |
| | : | ARGUED: May 23, 2023 |

**OPINION**

**JUSTICE BROBSON**                                    **DECIDED: October 18, 2023**

In this discretionary appeal, we must determine whether an order determining that grandparents have standing under Section 5325(3) of the Domestic Relations Code, 23 Pa. C.S. § 5325(3),[1] to file and pursue an action for partial physical custody of their grandchildren is a collateral order appealable as of right under Pennsylvania Rule of Appellate Procedure 313, Pa.R.A.P. 313 (Rule 313). For the reasons that follow, we hold that such an order is not a collateral order, and, therefore, we affirm the Superior Court's order quashing this appeal.

This matter arises out of an action for custody of E.J.R. and A.L.R. (collectively, the Children). In August 2017, A.L.R. (Father) and T.A.D-R. (Mother) (collectively,

---

[1] Section 5325(3) of the Domestic Relations Code, titled "Standing for partial physical custody and supervised physical custody," provides, in relevant part: "[G]randparents . . . may file an action . . . for partial physical custody . . . when the child has, for a period of at least 12 consecutive months, resided with the grandparent . . . , excluding brief temporary absences of the child from the home, and is removed from the home by the parents . . . ."

Parents) began residing with J.C.D., III, and A.M.D. (collectively, Grandparents), Mother's parents, at their home in York County, Pennsylvania. While Parents resided at Grandparents' home, the Children were born to Parents: E.J.R. in April 2019, and A.L.R. in March 2021. Parents and the Children continued to reside with Grandparents until May 2, 2022, when, following a disagreement, Parents moved out of Grandparents' home with the Children.

Thereafter, on July 20, 2022, Grandparents filed a complaint in custody with the York County Court of Common Pleas (trial court), seeking shared legal and partial physical custody of the Children. In response thereto, Parents filed preliminary objections, alleging, *inter alia*, that Grandparents lacked standing to pursue an action for custody of the Children. Following a hearing, the trial court found: (1) Parents and the Children lived in the same home as Grandparents for approximately five years; (2) during that time, Grandparents were not raising the Children and did not stand in loco parentis to the Children but, rather, were helping Parents with the Children as grandparents and as people sharing living quarters typically do; and (3) Grandparents filed their custody complaint within six months of when Parents removed the Children from Grandparents' home. Based on these factual findings, the trial court entered an order (docketed on September 23, 2022), concluding that Grandparents did not have standing to file and pursue an action for shared legal and partial physical custody of the Children under Section 5324 of the Domestic Relations Code, 23 Pa. C.S. § 5324.[2] After conducting

---

[2] Section 5324 of the Domestic Relations Code, titled "Standing for any form of physical custody or legal custody," provides, in pertinent part:

> The following individuals may file an action under this chapter for any form of physical custody or legal custody:
>
> . . . .

(continued…)

some research, however, the trial court entered a second order (Standing Order) (docketed on October 6, 2022), concluding that Grandparents did have standing to file and pursue an action for partial physical custody of the Children under Section 5325(3) of the Domestic Relations Code. In its Standing Order, the trial court specifically noted that it was "remind[ing] everyone that [its Standing Order was] just a decision on standing, and not a decision on what if any custodial rights . . . [G]randparents should have as that will be determined at the conciliation conference, and if not settled there, then on to a trial." (Reproduced Record (R.R.) at 84a.)

Parents appealed the trial court's Standing Order to the Superior Court. Recognizing that there were outstanding custody claims pending before the trial court and that the trial court's Standing Order, therefore, did not appear to be final or otherwise immediately appealable, the Superior Court directed Parents to show cause as to why their appeal should not be quashed. In response, Parents argued that they are married, that they have always been an intact family with the Children, that they have made a joint determination that it is not in the Children's best interests to have a relationship with Grandparents, and that they do not wish for Grandparents to have any custody rights to

---

> (3) A grandparent of the child who is not in loco parentis to the child:
>
> > (i) whose relationship with the child began either with the consent of a parent of the child or under a court order;
> >
> > (ii) who assumes or is willing to assume responsibility for the child; and
> >
> > (iii) when one of the following conditions is met:
> >
> > . . . .
> >
> > (C) the child has, for a period of at least 12 consecutive months, resided with the grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, in which case the action must be filed within six months after the removal of the child from the home.

the Children. Parents conceded, however, that the trial court's Standing Order was not a final order. Instead, Parents maintained that the trial court's Standing Order was appealable as of right under the collateral order doctrine. More specifically, Parents maintained that the trial court's Standing Order "meets the requirements of the collateral order doctrine because it is collateral to the main issue of child custody[,] . . . it impacts the number of parties who will participate in the action, and it cannot be delayed until a final order is issued without being lost." (R.R. at 97a (internal quotation marks omitted).) The Superior Court disagreed, however, and, by per curiam order dated November 14, 2022, quashed Parents' appeal as interlocutory, concluding that Parents did not present a legal basis for the Superior Court's jurisdiction.

Subsequent thereto, Parents filed a petition for allowance of appeal, seeking this Court's discretionary review, which we granted limited to the following issue, as stated by Parents:

> Whether the Pennsylvania Supreme Court should exercise judicial discretion and grant an appeal to [Parents], as the trial court's order was appealable as of right under [Rule 313] as a collateral [order]?

*J.C.D., III v. A.L.R.*, 292 A.3d 553 (Pa. 2023) (per curiam) (some alterations in original). The question of whether an order is collateral and appealable as of right under Rule 313 is a question of law. *K.C. v. L.A.*, 128 A.3d 774, 778 (Pa. 2015). Consequently, our standard of review is de novo and our scope of review is plenary. *Id.*

As a general rule, "an appellate court's jurisdiction extends only to review of final orders." *Shearer v. Hafer*, 177 A.3d 850, 855 (Pa. 2018); *see also* Pa.R.A.P. 341(a) ("[A]n appeal may be taken as of right from any final order of a . . . trial court."). A final order is an order that "disposes of all claims and of all parties" or "is entered as a final order" pursuant to a determination of finality by a trial court or other government unit. Pa.R.A.P. 341(b)(1), (3). As we have previously stated, "[t]he final order rule reflects the

long-held limitation on review by both federal and state appellate courts[,]" and "[c]onsidering issues only after a final order maintains distinctions between trial and appellate review, respects the traditional role of the trial judge, and promotes formality, completeness, and efficiency." *Shearer*, 177 A.3d at 855. Nonetheless, the collateral order doctrine, which has been codified in Rule 313, "permit[s] immediate appellate review of certain [non-final] collateral orders." *Id.* at 856; *see also Rae v. Pa. Funeral Dirs. Ass'n*, 977 A.2d 1121, 1125 (Pa. 2009). Rule 313 provides:

> (a) General Rule.  An appeal may be taken as of right from a collateral order of a trial court or other government unit.

> (b) Definition.  A collateral order is an order[:  (1)] separable from and collateral to the main cause of action[; (2)] where the right involved is too important to be denied review[;] and [(3)] the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313.  As a means to reinforce and support the final order rule, however, this Court has concluded that the collateral order doctrine must be narrowly construed, and, before application thereof, "every one of its three prongs [must] be clearly present," especially considering that a party may seek permission to appeal an interlocutory—*i.e.*, non-final—order pursuant to Pennsylvania Rule of Appellate Procedure 312, Pa.R.A.P. 312.[3] *Rae*, 977 A.2d at 1126 (citing *Melvin v. Doe*, 836 A.2d 42, 47 (Pa. 2003), and *Geniviva v. Frisk*, 725 A.2d 1209, 1214 & n.5 (Pa. 1999)); *Shearer*, 177 A.3d at 858.

---

[3] Pennsylvania Rule of Appellate Procedure 312 provides:  "An appeal from an interlocutory order may be taken by permission pursuant to Chapter 13 (interlocutory appeals by permission)."  More specifically, with the permission of the relevant appellate court, a litigant may bring an appeal if the trial court or other government unit certifies in its order "that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter."  42 Pa. C.S. § 702; *see also* Pa.R.A.P. 1311(a)(1) ("An appeal may be taken by permission from an interlocutory order . . . certified under 42 Pa. C.S. § 702(b) or for which certification pursuant to 42 Pa. C.S. § 702(b) was denied . . . . ").

Indeed, we have explained that "[w]e construe the collateral order doctrine narrowly so as to avoid 'undue corrosion of the final order rule' and to prevent delay resulting from 'piecemeal review of trial court decisions.'" *K.C.*, 128 A.3d at 778 (internal citation omitted) (quoting *Melvin*, 836 A.2d at 47, and *Pridgen v. Parker Hannifin Corp.*, 905 A.2d 422, 427 (Pa. 2006)).

With these basic principles in mind, we turn to the application of the collateral order doctrine to the facts presented in this appeal. As set forth more fully above, the collateral order doctrine "permits an appeal as of right from a non-final collateral order if the order satisfies the three requirements set forth in Rule 313(b)—separability, importance, and irreparability." *Shearer*, 177 A.3d at 858. Here, Grandparents concede in their brief to this Court that Parents have satisfied the first two prongs of the collateral order doctrine as set forth in Rule 313(b).[4] We agree. With respect to the first prong—*i.e.*, separability,—"an order is separable from the main cause of action if it is 'entirely distinct from the underlying issue in the case' and if 'it can be resolved without an analysis of the merits of the underlying dispute.'" *K.C.*, 128 A.3d at 778 (quoting *Commonwealth v. Blystone*, 119 A.3d 306, 312 (Pa. 2015)). We previously held that a lower court's order denying intervention in a custody action for lack of standing is separable from the main cause of action because "the issue of whether [the a]ppellants are among the individuals who have standing to seek custody . . . is a conceptually distinct legal question which has no bearing on the central issue within the custody action—who is entitled to physical and legal custody of [the c]hild in light of her best interests." *Id.* at 779. Consequently, as this matter involves whether Grandparents have standing to file and pursue an action for

---

[4] At the time of oral argument before this Court, Grandparents' counsel indicated that, while he initially conceded that Parents had satisfied the separability prong of the collateral order doctrine, his position had changed, given Parents' counsel's indication that the standing issue was not a separate legal determination and, instead, was related to the underlying facts of this case.

partial physical custody of the Children under Section 5325(3) of the Domestic Relations Code, an issue that is separate and distinct from the issue of whether Grandparents are entitled to partial physical custody of the Children, we conclude that Parents have satisfied the separability prong of the collateral order doctrine.

With respect to the second prong of the collateral order doctrine, "a right is important if 'the interests that would go unprotected without immediate appeal are significant relative to the efficiency interests served by the final order rule.'" *Id.* at 779 (quoting *Commonwealth v. Williams*, 86 A.2d 771, 782 (Pa. 2014)). More particularly, "the rights involved must implicate more than just the individual parties in the matter[] and, instead, must be 'deeply rooted in public policy going beyond the particular litigation at hand.'" *Id.* (quoting *Blystone*, 119 A.3d at 312). We have explained that, while a "claimed right to standing to intervene" in a custody proceeding "may, at first blush, appear to implicate only the individual parties involved, this right has important policy implications extending beyond [each] particular case, as the [Commonwealth] has a 'longstanding interest in protecting the health and emotional welfare of children,'" and decisions relative to who has "standing to participate in a child custody action directly impact the children involved in such actions." *Id.* (quoting *Hiller v. Fausey*, 904 A.2d 875, 886 (Pa. 2006), *cert. denied*, 549 U.S. 1304 (2007)). We have further explained that, "in the context of child custody proceedings, the [Commonwealth] has a 'paramount concern' in 'the best interest and permanent welfare of the child[]' and has deemed all other considerations 'subordinate to the child's physical, intellectual, moral and spiritual well-being.'" *Id.* (quoting *In re Davis*, 456 A.2d 614, 618 (Pa. 1983)). For these reasons, we previously held that the Commonwealth's "paramount interest in the welfare of children and, as a result, in identifying the parties who may participate in child custody proceedings, demonstrates that [a] claimed right to [standing to] intervene [in a custody proceeding]

satisfies the importance prong of the collateral order doctrine." *Id.* at 780. As a result, given that this matter involves the issue of whether Grandparents have a right—*i.e.*, standing—to file and pursue an action for partial physical custody of the Children under Section 5325(3) of the Domestic Relations Code, we conclude that Parents have satisfied the importance prong of the collateral order doctrine.

With the first two prongs so easily satisfied, our analysis focuses on the third prong of the collateral order doctrine—*i.e.*, irreparability. To satisfy the irreparability prong, "the matter must effectively be unreviewable on appeal from final judgment." *Commonwealth v. Wells*, 719 A.2d 729, 730 (Pa. 1998). Simply put, there is nothing about the present case that would make the trial court's Standing Order unreviewable on appeal from a final judgment in the underlying custody proceedings. In the event that the trial court, following a custody hearing, were to award some form of custody of the Children to Grandparents, Parents could at that time appeal both the trial court's Standing Order and the trial court's final custody order to the Superior Court. While there may be some delay with obtaining appellate review of the trial court's Standing Order, Parents' right to appeal therefrom will not be irreparably lost if an immediate appeal is not permitted. For these reasons, we conclude that Parents have failed to satisfy the irreparability prong of the collateral order doctrine.

Parents attempt to avoid this conclusion for several reasons. First, Parents direct our attention to our prior decision in *K.C.* In *K.C.*, we considered, relative to the irreparability prong, whether the appellants' right to appeal from an order denying their petition to intervene in a child custody action on the basis of a lack of standing would be irreparably lost if they were not permitted to appeal immediately therefrom. *K.C.*, 128 A.3d at 775-76, 780-81. Ultimately, this Court concluded that, because *In re Barnes*

*Foundation*, 871 A.2d 792 (Pa. 2005) (*Barnes*),[5] "unequivocally requires any party who was denied intervention and who satisfies the requirements of Rule 313 to appeal from the order denying intervention within 30 days of its entry or lose the right to appeal the order entirely, [the a]ppellants' right to appeal from the order denying intervention in the instant case will be manifestly lost if they are not permitted to appeal the order." *Id.* at 780. *K.C.*'s reasoning and analysis with respect to the irreparability of the collateral order doctrine, however, has no applicability to the present matter. Here, Parents are not seeking to appeal from an order denying them the right to intervene in the underlying child custody action for lack of standing; rather, Parents are the parties against whom Grandparents filed their action for partial physical custody of the Children and are seeking to appeal from an order that determined that Grandparents have standing to file and

---

[5] In *Barnes*, the appellant sought to intervene in a matter involving the restructuring of a charitable trust, which the orphans' court denied. *See Barnes*, 871 A.2d at 793. The appellant did not appeal the orphans' court's order denying his request to intervene and did not otherwise participate in the proceedings before the orphans' court; instead, the appellant filed an appeal from the orphans' court's final order. *Id.* This Court, exercising its extraordinary jurisdiction, quashed the appellant's appeal because he had failed to obtain intervenor status and, therefore, he was not a party to the underlying action. *Id.* at 795. In so doing, this Court reasoned that "a common pleas court's order denying intervention is one type of order which must be appealed within thirty days of its entry under [Pennsylvania] Rule of Appellate Procedure 903, or not at all, precisely because the failure to attain intervenor status forecloses a later appeal." *Id.* at 794.

In *K.C.*, this Court acknowledged that, "[w]hile *Barnes* did not involve a child custody action, its language is broad and applies to any 'common pleas court's order denying intervention.'" *K.C.*, 128 A.3d at 780 (quoting *Barnes*, 871 A.2d at 794). As a result, this Court concluded that *Barnes* applied to the circumstances presented in that case:

> [T]he rationale behind requiring the immediate appeal of a denial of intervention in *Barnes*—namely, the risk of interference with subsequent trial proceedings—is even more pronounced in the context of a child custody action, given the significant interests at stake. We, therefore, find that *Barnes* applies to the trial court's order in the instant case.

*Id.*

pursue the custody action. Additionally, there is nothing about the trial court's Standing Order that requires that it be appealed within 30 days of the entry thereof or the right to appeal therefrom would be lost. In fact, as stated above, Parents may appeal the trial court's Standing Order once a final custody order has been entered.

While they acknowledge that *K.C.* is distinguishable from this matter relative to the third prong of the collateral order doctrine, Parents, nonetheless, maintain that their claim will be irreparably lost if this Court postpones appellate review of the trial court's Standing Order until the entry of a final custody order because "[s]tanding in child custody cases is a matter of constitutional significance;" more specifically, Parents assert a constitutional right to raise the Children as they deem appropriate free from interference of third parties, in this case Grandparents. (Parents' Br. at 16 (citing *Hiller*, 904 A.2d at 885 ("[T]he right to make decisions concerning the care, custody, and control of one's children is one of the oldest fundamental rights protected by the Due Process Clause.")).) Parents contend further that "[a]llowing third parties to seek custody of a child burdens" that constitutional right. (*Id.* (citing *D.P. v. G.J.P.*, 146 A.3d 204, 210, 213 (Pa. 2016)).) Parents also point out that, in *D.P.*, this Court "emphasized the importance of permitting parents to challenge standing in child custody cases[] in order to protect those rights."[6] (*Id.*)

We certainly acknowledge that Parents have a fundamental right to direct the care, custody, and control of the Children. *See Hiller*, 904 A.2d at 885. We disagree, however, that the existence of that fundamental right is in any way applicable to the issue of whether

---

[6] While Parents cite *D.P.* in support of, *inter alia*, their contention that it is important to permit parents to challenge standing in child custody cases in order to protect their fundamental right to parent their children, Parents seemingly ignore that, in *D.P.*, we discussed the protection of parental rights not in the context of an appeal from a trial court's order concluding that a grandparent has standing to file and pursue an action for partial physical custody of the children but, rather, in the context of bifurcation of the issue of standing from any merits determination at the trial court level. *See D.P.*, 146 A.3d at 213.

Parents' challenge to the trial court's Standing Order will be irreparably lost if appellate review thereof is postponed until a final custody order is entered in this matter. A determination of whether appellate review of a claim will be irreparably lost does not turn on the importance of the right allegedly implicated. As explained more fully above, the collateral order doctrine has three, separate prongs—separability, importance, and irreparability—and each of those prongs must be clearly present before a court can determine that an order is collateral and immediately appealable as of right under Rule 313. *See* Pa.R.A.P. 313; *Rae*, 977 A.2d at 1126 (citing *Melvin*, 836 A.2d at 47, and *Geniviva*, 725 A.2d at 1214); *Shearer*, 177 A.3d at 858. We, therefore, reject Parents' invitation to blur the lines between those prongs and consider the importance of the alleged right under both the importance and irreparability prongs and conclude, as Parents would have us do, that the irreparability prong is satisfied any time the underlying litigation involves a fundamental or constitutional right.

Parents also go to great lengths to distinguish this case from *Beltran v. Piersody*, 748 A.2d 715 (Pa. Super. 2000), a case cited by the Superior Court in its quashal order. Parents suggest that in this case, unlike in *Beltran*: (1) Grandparents have no parental claim to the Children, legal or otherwise; (2) Parents, who are married and are an intact family with the Children, have made the joint determination that it is not in the Children's best interests to have a relationship with Grandparents; and (3) there is no protracted litigation involving custody of the Children. In *Beltran*, the Superior Court considered whether a trial court's order granting intervenor status to a child's biological father in an ongoing custody action was immediately appealable. *Beltran*, 748 A.2d at 716-18. Recognizing, *inter alia*, that the order granting the child's biological father intervenor status was not a final order and that the appellant did not seek permission to file an interlocutory appeal pursuant to Pennsylvania Rule of Appellate Procedure 312, the

Superior Court explained that immediate review would only be warranted if the order qualified as a collateral order under Rule 313. *Id.* at 717-18. Ultimately, the Superior Court concluded that the order granting the child's biological father intervenor status in the underlying custody action did not meet the requirements for a collateral order under Rule 313 and, therefore, quashed the appellant's appeal. *Id.* at 716, 719. In so doing, the Superior Court reasoned that the appellant had failed to satisfy both the separability and the irreparability prongs of the collateral order doctrine because the intervention of the child's biological father in the custody action had "the potential to resolve issues related to custody, support, and visitation" and "the denial of immediate review of the [intervention] order will not cause [the appellant's] claim to be irreparably lost, as he can seek review in an appeal from a final custody order." *Id.* at 719.

Initially, we note that *Beltran*, although decided 15 years prior, is essentially the converse of *K.C.*—*i.e.*, pursuant to *K.C.*, an order *denying* intervenor status in a child custody matter is a collateral order that is immediately appealable as of right pursuant to Rule 313, whereas, pursuant to *Beltran*, an order *granting* intervenor status in a child custody matter does not meet the requirements for a collateral order under Rule 313. *See K.C.*, 128 A.3d at 781; *Beltran*, 748 A.2d at 719. *Beltran*, like *K.C.*, however, does not render any support to Parents' position in this matter. Contrary to Parents' suggestions, *Beltran* is not distinguishable simply because the facts of that case are markedly different from the facts presented here. Indeed, while the underlying facts may have been relevant to the Superior Court's analysis of the separability prong—*i.e.*, the intervenor was the child's biological father—the Superior Court did not rely upon those facts in its analysis of the irreparability prong. The sole question relative to irreparability was whether the appellant in *Beltran* could appeal the trial court's intervention order once a final custody order had been entered, which the Superior Court concluded he could. That situation is

the exact situation presented here: Parents can appeal the trial court's Standing Order once the trial court enters a final custody order.

Overall, Parents maintain that they "have a fundamental constitutional right to parent [the C]hildren, which includes [the] right to be free of custody litigation involving third parties." (Parents' Br. at 20.) Parents contend that the quashal of their appeal from the trial court's Standing Order will result in them "being subjected to extensive litigation involving [Grandparents], including a custody conciliation conference . . . , a lengthy custody hearing[,] and a second appeal on the exact issue [they] now seek to raise." (*Id.*) Parents further posit that, "[n]ot only would [they] incur a substantial financial burden as a result of this litigation, but they also could lose months of time as the custody hearing and appeals process drags on." (*Id.*) Lastly, Parents suggest that, "[u]nder the unique circumstances of this case, a court could not hope to fully vindicate or restore [their] currently undisturbed constitutional right to parent [the C]hildren by the time of a second appeal." (*Id.*)

In making these arguments, however, Parents seemingly ignore two important points. First, the right that Parents advance is not, as they would like us to believe, the fundamental right to parent the Children free from interference from third parties. As it stands presently, there is no interim or final custody order in place that is at all interfering with Parents' fundamental right to parent the Children. Rather, Parents appear to claim some right to be free from custody litigation—and the financial and emotional burden associated therewith—brought against them by third parties. While not directly cited in their brief to this Court, Parents seem to rely on the United States Supreme Court's decision in *Troxel v. Granville*, 530 U.S. 57 (2000),[7] to support their proposition in this

---

[7] In *Troxel*, the United States Supreme Court considered whether a Washington statute, which permitted "[a]ny person" to petition for visitation rights of a child "at any time" and authorized the court to grant visitation rights whenever "visitation may serve the best (continued…)

regard. Based upon our reading, however, *Troxel* does not establish that Parents have a right to be free from custody litigation brought against them by third parties. *Troxel* involved an as applied challenge to a state statute that granted broad-sweeping rights to "any person" to petition for visitation of a child "at any time," whereas here, Section 5325(3) of the Domestic Relations Code grants standing to a child's grandparents under very limited circumstances. *See Troxel*, 530 U.S. at 60, 65 (quoting Wash. Rev. Code § 26.10.160(3)). Additionally, in *Troxel*, the United States Supreme Court addressed the burdens of custody litigation only in the context of explaining why a remand was unnecessary and not in the context of whether the state statute, or more specifically the custody litigation brought thereunder, burdened the parent's fundamental right to parent her children. *See id.* at 75. Moreover, even if we were to assume that *Troxel* establishes that Parents have a right to be free from custody litigation brought against them by third parties, it is not a right that warrants this Court's consideration under these

_____

interest of the child," as applied to a parent and her family, violated the due process clause of the Fourteenth Amendment to the United States Constitution by interfering with that parent's fundamental right to direct the care, custody, and control of her children. *Troxel*, 530 U.S. at 60, 64-74 (quoting Wash. Rev. Code § 26.10.160(3)). Ultimately, the Supreme Court held that the application of the Washington statute to the parent and her family "violated her due process right to make decisions concerning the care, custody, and control of her daughters." *Id.* at 74. In discussing the reasons why a remand to the Washington Supreme Court for further proceedings was not necessary, the Supreme Court explained:

> [T]he burden of litigating a domestic relations proceeding can itself be "so disruptive of the parent-child relationship that the constitutional right of a custodial parent to make certain basic determinations for the child's welfare becomes implicated." In this case, the litigation costs incurred by [the parent] on her trip through the Washington court system and to this Court are without a doubt already substantial. As we have explained, it is apparent that the entry of the visitation order in this case violated the Constitution. We should say so now, without forcing the parties into additional litigation that would further burden [the parent's] parental right.

*Id.* at 75 (citation omitted).

circumstances because: (1) Section 5325(3) of the Domestic Relations Code is limited and only grants certain grandparents the right to seek partial physical custody of their grandchildren; and (2) the constitutionality of Section 5325(3) of the Domestic Relations Code is not an issue before this Court in this appeal, given that we granted review to consider the discrete issue of whether the trial court's Standing Order was appealable as of right under Rule 313 as a collateral order.

Second, Parents could have sought permission to file an interlocutory appeal under Pennsylvania Rule of Appellate Procedure 312. To that end, the concerns that Parents raise now, which we conclude fail to satisfy the collateral order doctrine, could have factored into a Superior Court determination of whether to grant permission to appeal the trial court's Standing Order as an interlocutory order. In other words, Parents could have sought certification from the trial court that its Standing Order involved a controlling question of law—*i.e.*, whether Grandparents have standing to file and pursue an action for partial physical custody of the Children—over which there was substantial disagreement between the parties and that an immediate appeal thereof could have materially advanced the ultimate termination of the custody action. *See* Pa.R.A.P. 1311(a)(1); 42 Pa. C.S. § 702(b). With that certification, or even a denial of that certification, Parents could have then sought permission from the Superior Court to appeal the trial court's Standing Order as an interlocutory order. *See* Pa.R.A.P. 1311(a)(1); 42 Pa. C.S. § 702(b).

In sum, we conclude that Parents have failed to satisfy the irreparability prong of the collateral order doctrine, and, therefore, the trial court's Standing Order does not meet the requirements of a collateral order appealable as of right under Rule 313. In so doing, we emphasize that the collateral order doctrine is a narrow exception to the final order rule that must be narrowly construed. *See Rae*, 977 A.2d at 1126 (citing *Melvin*, 836 A.2d

at 47, and *Geniviva*, 725 A.2d at 1214); *Shearer*, 177 A.3d at 858. Accordingly, we affirm the Superior Court's order.[8]

---

[8] We acknowledge that our decision today may be inconsistent with the Superior Court's prior decision in *K.W. v. S.L.*, 157 A.3d 498 (Pa. Super. 2017). In *K.W.*, a child's father (Father) appealed a trial court order granting the child's prospective adoptive parents (Appellees) in loco parentis standing to pursue custody of the child. *See K.W.*, 157 A.3d at 499. Before addressing the merits of Father's appeal, the Superior Court considered whether the trial court's order was properly appealable under the collateral order doctrine. *Id.* at 501-04. The Superior Court concluded that, with respect to the separability and importance prongs of the collateral order doctrine, the reasoning advanced by this Court in *K.C.* applied with equal force to the situation before it. *Id.* at 502. Although it found *K.C.* distinguishable with respect to the irreparability prong, the Superior Court, nonetheless, concluded that Father's claim would be irreparably lost if it postponed review of the trial court's order until a final order had been issued. *Id.* at 502-04. In so doing, the Superior Court reasoned:

> Father has a fundamental constitutional right to parent [the c]hild. This includes the right to be free of custody litigation involving third parties. If we quash this appeal and remand to the trial court, Father will be subjected to extensive litigation involving Appellees, including a custody hearing and a second appeal on the exact issue he now seeks to raise. Not only would Father incur a substantial financial burden as a result of this litigation, but he also could lose months of time caring for and bonding with [the c]hild as the custody hearing and appeals process drags on. Under the unique circumstances of this case, where Father was deprived of [the c]hild by a private adoption agency without the benefit of a hearing or other due process protections, this [c]ourt could not hope to fully vindicate or restore Father's rights by the time of his second appeal.

*Id.* at 504. Consequently, the Superior Court concluded that the trial court's order granting in loco parentis standing to Appellees to pursue custody of the child satisfied all three prongs of the collateral order doctrine. *Id.*

While not cited in their brief to this Court, it is readily apparent that Parents derive at least some of their arguments relative to the irreparability prong from the Superior Court's rationale in *K.W.* (*See* Parents' Br. at 20.); *see also supra* at 13 (summarizing Parents' arguments). Given, however, that the parties have not addressed the applicability of *K.W.* or its continued viability in their briefs to this Court, we see no reason to disapprove of *K.W.* at this time.

Justices Dougherty, Wecht and Mundy join the opinion.

Justice Wecht files a concurring opinion.

Chief Justice Todd files a dissenting opinion in which Justice Donohue joins.